UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY DARNELL MYLES,

    Plaintiff,

v.

UNKNOWN GASKILL, *et al.*,

    Defendants.
    _____/

Case No. 1:09-cv-177

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 17).

**I.**    **Background**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's complaint names the following defendants: Corrections Officer ("CO") Thomas Gaskill; CO Dessaray Rose; Michigan Department of Corrections (MDOC) Director Patricia Caruso; MDOC Deputy Director Dennis Straub; Inspector Shawn Young; and Grievance and Appeals Manager James Armstrong.

In his first cause of action, plaintiff alleged that on August 29, 2008, CO Gaskill sexually assaulted him. Compl. at ¶ 9. Plaintiff alleged that Gaskill "grabbed my Ass and said I had a fat soft Ass like Beyonce the R&B singer." *Id.* Plaintiff alleged that this act "was degrading, humiliating, and has caused alarm and psychological distress." *Id.* Plaintiff claims that Gaskill acted "in retaliation for Plaintiff's past complaints." *Id.* He further alleged that this conduct was in violation of MDOC Policy Directive 03.03.105, which prohibits sexual harassment and the use of "derogatory, demeaning, humiliating, or degrading actions." *Id.* at ¶ 12. Plaintiff also alleged that other prisoners were able to see this conduct, which placed his life and well being in great danger, and caused him to be assaulted "numerous times." *Id.* at ¶ 14.

In his second cause of action, plaintiff alleged that CO Rose failed to report this incident because Gaskill "was only playing" and that she (CO Rose) would not go against a co-worker for an inmate. *Id.* at ¶ 15. Plaintiff alleged that CO Rose took an active part in the violation by covering it up and refusing to report it. *Id.* at ¶ 19. In his third, fourth and fifth causes of action, plaintiff alleged nearly identical claims that Director Caruso, Deputy Director Straub and Grievance Director Armstrong, alleging that each had a legal duty to protect prisoners but refused to take corrective actions against CO Gaskill and CO Rose. *Id.* at ¶¶ 20-29. These three defendants also participated in a "cover up" of the alleged violations. *Id.* Finally, in his sixth cause of action, plaintiff alleged that Inspector Young refused to take corrective action against CO's Gaskill and Rose, covered up the incident and then wrote plaintiff a major misconduct ticket which resulted in his transfer to a harsher correctional facility. *Id.* at ¶¶ 30-34. Plaintiff alleged that Inspector Young retaliated against him, because a hearings officer found plaintiff not guilty of the ticket. *Id.* Plaintiff

seeks compensatory and punitive damages in excess of $1,000,000.00. In addition, plaintiff wants this court to order psychological treatment for him "under the care of the University of Michigan."

## II. Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

3

**B.     Exhaustion**

Defendants Director Caruso, Deputy Director Straub, Grievance Director Armstrong and Inspector Young seek summary judgment for lack of exhaustion. The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130. A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

4

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

Defendants have identified only one grievance which relates to this incident, IBC 2008-09-1957-17c ("grievance 1957"). *See* docket no. 18-7. This grievance, dated August 29, 2008, complains that CO Gaskill, while securing cuffs for the showers, grabbed his buttocks, "said I had a Fat soft ass like Beyonce the R&B singer," and referred to plaintiff as a woman. *Id.* Plaintiff characterized this action as fourth degree criminal sexual conduct in violation of M.C.L. § 750.520e, because CO Gaskill grabbed his buttocks without his consent. *Id.* Plaintiff further stated that he told CO Rose about the incident, but Rose told him that "she is not going against her co-worker for an inmate" and that "Gaskill was only playing." *Id.* Plaintiff acknowledges in his complaint that this is the operative grievance. *See* docket no. 1.

Plaintiff's grievance did not name Director Caruso, Deputy Director Straub, Grievance Director Armstrong or Inspector Young as required by PD 03.02.130 ¶ R. Because plaintiff failed to name these four defendants, he has failed to properly exhaust this grievance against them as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants Director Caruso, Deputy Director Straub, Grievance Director Armstrong and Inspector Young are entitled to summary judgment for lack of exhaustion.

### C. Plaintiff did not suffer a physical injury

Defendants CO Gaskill and CO Rose contend that plaintiff cannot maintain a § 1983 action against them, because plaintiff suffered no physical injury. Plaintiff's claim against these two defendants arose from Gaskill's alleged touching of plaintiff's buttocks and Rose's failure to report it. The only conceivable constitutional claim for this type of physical contact would be one for cruel and unusual punishment in violation of the Eighth Amendment.

The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In analyzing plaintiff's claims, the court must examine whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 6. Courts evaluate the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7, quoting *Whitley*, 475 U.S. at 321. As the Sixth Circuit summarized in *Moore*, 2 F.3d at 700, "To determine whether a claim of assault rises to a level of constitutional magnitude, a court must consider the reasons or motivation for the conduct, the type of force used, and the extent of the inflicted injury."

Courts must give deference to actions prison guards take to maintain prison discipline, as long as those actions are taken pursuant to a considered choice and not in bad faith or for no legitimate purpose. *Whitley*, 475 U.S. at 321-22. "[Not every] malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Where the use of some force

6

is required to restore order, it does not violate the Eighth Amendment unless the force used is "repugnant to the conscience of mankind" or the force is used "maliciously and sadistically for the very purpose of causing harm." *Id.* at 9,10 (citations omitted). While an Eighth Amendment claim need not include a "significant injury," a *de minimis* use of physical force will not support such a claim unless the force used is "of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10. *See also*, *Fillmore v. Page,* 358 F.3d 496, 504 (7th Cir. 2004) ("the quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind"); *Moore*, 2 F.3d at 700-01.

A factual dispute exists as to whether CO Gaskill "grabbed" plaintiff's buttocks. In his affidavit, CO Gaskill denies that he grabbed plaintiff's buttocks, stating that the only physical contact he had with plaintiff was to apply restraints, perform a pat down search and escort him to the shower. Gaskill Aff. at ¶ 3 (docket no. 18-3). In his counter-affidavit, plaintiff states that CO Gaskill *did* grab his buttocks. Plaintiff's Aff. at ¶¶ 2-3 (docket no. 23). For purposes of resolving this motion for summary judgment, the court must view the facts in the light most favorable to plaintiff, which, in this case, means that the court will accept plaintiff's assertion that CO Gaskill "grabbed" his buttocks.

Nevertheless, plaintiff's claim fails. Before plaintiff can bring an Eighth Amendment claim, he must show that he suffered a physical injury. *See* 42 U.S.C. § 1997e(e) ("[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"). "[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Jarriett v. Wilson*,

7

162 Fed. Appx. 394, 400 (6th Cir. 2005). Even if CO Gaskill grabbed his buttocks, plaintiff presented no evidence that he suffered any physical injury. Claims that isolated or relatively minor incidents of alleged sexual abuse or harassment rise to the level of cruel and unusual punishment are not sufficiently serious to constitute an Eighth Amendment violation. *See Jackson v. Madery*, 158 Fed. Appx. 656, 661 (6th Cir. 2005) (no Eighth Amendment violation where female guard rubbed and grabbed male prisoner's buttocks during a shakedown); *Allen v. Johnson*, 66 Fed. Appx. 525 (5th Cir. 2003) (even if it is assumed that a guard touched a prisoner in a sexual manner during routine pat-down searches, such allegations are not sufficiently serious assaultive behavior to show a constitutional deprivation); *Boddie v. Schneider*, 105 F.3d 857, 859-60 (2nd Cir. 1997) (no Eighth Amendment violation where female guard squeezed a male prisoner's hand, touched his penis, made sexually suggestive comments, and twice pinned him to a door with her body).

Furthermore, plaintiff cannot base an Eighth Amendment claim on alleged verbal harassment. While plaintiff may not like being compared to a female singer, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Threats, verbal abuse and harassment are insufficient to state a § 1983 claim. *See Williams v. Gersbacker,* No. 93-1515, 1993 WL 430138 at *1 (6th Cir. Oct. 22, 1993); *Ivey*, 832 F.2d at 954-955. "Allegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment." *Johnson v. Moore*, 7 Fed. Appx. 382, 384 (6th Cir. 2001), citing *Ivey*, 832 F.2d at 955. "Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth

Amendment." *Id.* Accordingly, defendants' motion for summary judgment should be granted with respect to plaintiff's Eighth Amendment claims directed at CO Gaskill and CO Rose.

### D. Retaliation

Finally, plaintiff alleges that CO Gaskill took these actions "in retaliation for Plaintiff's past complaints." Compl. at ¶ 9. Defendants' motion does not address this particular allegation of retaliation. It is unclear whether plaintiff has attempted to allege a separate retaliation claim against CO Gaskill or simply included this additional allegation as part of his Eighth Amendment claim. In either event, this isolated reference to retaliation is insufficient to state a cause of action.

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

"A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones*, 549 U.S. at 215. To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith*

9

*v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

Plaintiff has alleged that CO Gaskill acted in retaliation for unspecified "past complaints." However, this is nothing more than a conclusory allegation of retaliation: plaintiff has not identified these "past complaints;" has not set forth a chronology of events to support a retaliation claim; and has not included any allegations to establish the causation element of a retaliation claim. "[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state . . . a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation marks omitted). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (internal quotation marks omitted). Accordingly, plaintiff's retaliation claim against CO Gaskill should be dismissed.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 17) be **GRANTED**.

Dated: January 8, 2010                    /s/ Hugh W. Brenneman, Jr.
                                          HUGH W. BRENNEMAN, JR.
                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).